H. Michael Semler  (DC Bar 162479)
Mark Kreitman  (DC Bar 260828)
Michael P. Moore  (DC Bar 438608)
William Sullivan
Jena Martin  (DC Bar 459776)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W.
Washington, D.C. 20549
Tel: (202) 824-5377
Fax: (202) 942-9581

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>450 Fifth Street, N.W.<br>Washington, D.C. 20549<br><br>Plaintiff,<br><br>v.<br><br>VASO ACTIVE PHARMACEUTICALS, INC.,<br>and JOHN MASIZ,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:     Civil Action No. _____<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC"), for its complaint against

Vaso Active Pharmaceuticals, Inc. ("Vaso Active") and John Masiz, alleges as follows:

## NATURE OF THE CASE

1.     This action arises from false and misleading public statements made by

defendants Vaso Active and John Masiz (jointly "Defendants") in 2003 and early 2004 in

connection with the initial public offering ("IPO") of Vaso Active's common stock.  In

filings made with the SEC and on the Vaso Active website, Defendants knowingly or

recklessly made material misrepresentations regarding approval of Vaso Active's athlete's foot medication and other pharmaceutical products by the U.S. Food and Drug Administration ("FDA").

2.     Defendants' misrepresentations and omissions were made in anticipation of and shortly after Vaso Active's initial public offering in December 2003. The price of Vaso Active's newly-issued Class A common stock, including the holdings controlled by defendant John Masiz, increased by more than 800% between December 2003 and March 2004. The price of Vaso Active's common stock subsequently collapsed.

3.     Defendants' false and misleading statements violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 13(a) of the Exchange Act [15 U.S.C. Section 78m(a)] and Rules 13a-1 and 12b-20 thereunder [17 C.F.R. Sections 240.13a-1 and 240.12b-20]. Masiz, as Chairman and CEO of Vaso Active, also violated Rule 13a-14 of the Exchange Act [17 C.F.R. Sections 240.13a-1] by falsely certifying Vaso Active's annual report.

4.     The SEC seeks a permanent injunction barring Defendants from engaging in further violations of the securities laws and barring John Masiz from serving as an officer or director of a public company. The SEC also seeks an order requiring John Masiz to pay a civil money penalty.

## JURISDICTION AND VENUE

5.     The SEC brings this action pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

6.     This Court has jurisdiction to hear this matter pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e) and 78aa].

7.     Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [5 U.S.C. § 78aa].

## DEFENDANTS

8.     Vaso Active is a Delaware corporation with its principal place of business in Danvers, Massachusetts.  Vaso Active's Class A common stock is registered with the SEC pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)].  From December 2003 until early April 2004, Vaso Active's shares traded on the NASDAQ Small Cap Market, under the symbol "VAPH".

9.     John Masiz is the President, Chief Executive Officer, and Chairman of the Board of Vaso Active.

## FACTS

Ownership And Business Activities

10.     Vaso Active began operations in 2001 as a division of BioChemics, a private company producing over-the-counter medications for humans and animals, as well as a variety of animal care products.  Vaso Active was incorporated as a wholly-owned subsidiary of BioChemics in January 2003.  Vaso Active became a publicly-held company pursuant to an initial public offering on December 9, 2003.

11.     BioChemics continues to hold the controlling interest in Vaso Active through ownership of 45% of Vaso Active's issued and outstanding common stock (representing 71% of the voting power of the common stock).  John Masiz is the

3

President, Chief Executive Officer, Chairman of the Board, and controlling shareholder of BioChemics. BioChemics was founded in 1989 and has never been profitable.

12.     In documents filed with the SEC between July 2003 and March 2004, Vaso Active described its business activities as the commercialization, marketing, and sale of over-the-counter pharmaceutical products utilizing "transdermal drug delivery technology." Vaso Active stated that a combination of ingredients in its products acted as a "liquid needle" that could "introduce drugs into the bloodstream in an efficient and highly effective manner." Vaso Active referred to this combination of ingredients as "vaso active lipid encapsulated" (VALE) technology.

13.     Vaso Active identified its principal products as "Athlete's Relief" (medication for pain associated with athletic activity), "Osteon$^{®}$" (medication for arthritis pain), and "Termin8$^{®}$" (medication for athlete's foot). These products were developed by BioChemics.

14.     Vaso Active is licensed by BioChemics to market Athlete's Relief, Osteon, Termin8, and other over-the-counter products using the VALE technology. The products are provided to Vaso Active by BioChemics.

15.     Vaso Active conducts no research or development, and has no manufacturing capability. As of December 31, 2003, Vaso Active had seven full-time employees.

16.     Vaso Active has never earned a profit. Vaso Active's reported net revenues for recent years have been $100,209 (2001); $91,957 (2002); and $53,270 (2003). Vaso Active reported an accumulated deficit of $1.7 million as of December 31, 2003.

IPO And Increase In Stock Price

17.     Vaso Active became a public company as a result of an initial public offering on December 9, 2003.  In this IPO Vaso Active sold approximately 1.6 million shares of Class A common stock at $5 per share, netting approximately $6.4 million.

18.     During the three months following Vaso Active's initial public offering, the price of Vaso Active's Class A common shares increased 845%, to a high of $42.33 per share on March 3, 2004.  In early March 2004 Vaso Active issued a 200% stock dividend to holders of its Class A and B shares.  Following the issuance of these new shares, the price of Vaso Active shares continued to fluctuate broadly, with high trading volume.

Trading Suspension And Delisting

19.     The SEC began monitoring the trading in Vaso Active's stock in early 2004.  Based in part on the false and misleading statements and omissions made by Vaso Active and John Masiz, as identified further below, the SEC temporarily suspended trading in Vaso Active stock on April 1, 2004.

20.     On April 7, 2004, Vaso Active announced that it would voluntarily discontinue product sales until the SEC's inquiry is concluded.  On April 8, 2004, Vaso Active voluntarily requested that its stock be delisted by NASDAQ.

Fraudulent Misrepresentations And Omissions

21.     Defendants Vaso Active and John Masiz knowingly or recklessly made materially false and misleading public statements regarding FDA approval of Vaso Active's products.  These statements were made in Vaso Active's filings with the SEC and on Vaso Active's website.

22.     On July 3, 2003, Vaso Active filed a registration statement with the SEC for the stock to be offered in Vaso Active's initial public offering (Form SB-2). This filing was signed by John Masiz and stated that Vaso Active's products Athlete's Relief, Osteon, and Termin8 (then called deFEET) "have received FDA approval." This statement was false and misleading because none of these products had been approved by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval was false and misleading.

23.     On September 12, 2003, Vaso Active filed Amendment No. 1 to its registration statement for the public offering. This filing was signed by John Masiz and also stated that Vaso Active's products Athlete's Relief, Osteon, and Termin8 (then called deFEET) "have received FDA approval." This statement was false and misleading because none of these products had been approved by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval was false and misleading.

24.     On October 16, 2003, Vaso Active filed Amendment No. 2 to its registration statement for the public offering. This filing was signed by John Masiz and likewise stated that Vaso Active's products Athlete's Relief, Osteon, and Termin8 (then called deFEET) "have received FDA approval." This statement was false and misleading because none of these products had been approved by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval was false and misleading.

25.     On November 13, 2003, Vaso Active filed Amendment No. 3 to its registration statement for the public offering. This filing was signed by John Masiz and

6

again stated that Vaso Active's products Athlete's Relief, Osteon, and Termin8 (then

called deFEET) "have received FDA approval." This statement was false and misleading

because none of these products had been approved by the FDA. Defendants Vaso Active

and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval

was false and misleading.

26.     On December 9, 2003, the date of the initial public offering, Vaso Active

filed Amendment No. 4 to its registration statement for that offering. In this filing, which

was signed by John Masiz, Vaso Active once again stated that its products Athlete's

Relief, Osteon, and Terminat8 (then called deFEET) "have received FDA approval."

This statement was false and misleading because none of these products had been

approved by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless

in not knowing, that the claim of FDA approval was false and misleading.

27.     On December 10, 2003, the day after its public offering, Vaso Active filed

Post-Effective Amendment No. 1 to its registration statement. This filing was signed by

John Masiz and reiterated the claim that Athlete's Relief, Osteon, and Termin8 (then

called deFEET) "have received FDA approval." This statement was false and misleading

because none of these products had been approved by the FDA. Defendants Vaso Active

and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval

was false and misleading.

28.     On December 11, 2003, Vaso Active filed Post-Effective Amendment

No. 2 to its registration statement. This filing was signed by John Masiz and again stated

that Athlete's Relief, Osteon, and Termin8 (then called deFEET) "have received FDA

approval." This statement was false and misleading because none of these products had

been approved by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval was false and misleading.

29.     In early 2004 Vaso Active stated on its website that "Vaso Active has received FDA marketing approval for four OTC medications." This statement was false and misleading because none of the Vaso Active products had been approved for marketing by the FDA. Defendants Vaso Active and John Masiz knew, or were reckless in not knowing, that the claim of FDA approval was false and misleading.

30.     On March 26, 2004, Vaso Active filed its annual report (Form 10-KSB) for the fiscal year ending December 31, 2003. This filing was signed by John Masiz and stated that Athlete's Relief, Osteon, and Termin8 "are qualified under FDA OTC monographs and have been registered as such." This statement was false and misleading because to the extent that these products utilize a transdermal drug delivery system as claimed by Defendants, the products did not satisfy FDA monograph requirements. Defendants' failure to disclose that the Vaso Active products using VALE technology could not be sold without FDA approval, which had not been obtained, was a material omission. Defendants knew, or were reckless in not knowing, that the claimed qualification under FDA monographs was false and misleading. Masiz, as Chairman and CEO of Vaso Active, falsely certified that, based on his knowledge, the filing contained no untrue statement of material fact.

## FIRST CLAIM

### Defendants Vaso Active and John Masiz Violated
### Section 10(b) of the Exchange Act and Rule 10b-5

31.      Paragraphs 1 through 30 above are realleged and incorporated by reference.

32.      Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it
unlawful for any person, in connection with the purchase or sale of any security and by use
of any means or instrumentality of interstate commerce, the mails, or a national securities
exchange, to (i) employ any device, scheme, or artifice to defraud, (ii) make an untrue
statement of a material fact or omit a material fact necessary to make a statement not
misleading, or (iii) engage in any act, practice, or course of business which operates or
would operate as a fraud or deceit upon any person.

33.      As described above in Paragraphs 23 through 33, in connection with the
purchase or sale of securities issued by Vaso Active, and by use of the means and
instrumentalities of communication in interstate commerce and the mails, defendants
Vaso Active and John Masiz knowingly or recklessly made materially false and
misleading public statements, and failed to disclose material facts, relating to the need for
or status of FDA approval of Vaso Active's products using VALE technology.

34.      By reason of the foregoing, Vaso Active and John Masiz each violated,
and unless enjoined will continue to violate, Section 10(b) of the Exchange Act and Rule
10b-5.

## SECOND CLAIM

### Defendants Vaso Active and John Masiz
### Violated Section 17(a) of the Securities Act

35.     Paragraphs 1 through 30 are realleged and incorporated by reference.

36.     Section 17(a) of the Securities Act makes it unlawful for any person, in connection with the offer or sale of securities and using the means or instruments of transportation or communication in interstate commerce or the mails, to (i) employ a device, scheme or artifice to defraud, (ii) obtain money or property by means of an untrue statement of a material fact or an omission of a material fact necessary to make a statement not misleading, or (iii) engage in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser of securities.

37.     As described above in Paragraphs 23 through 29, in connection with the offer or sale of securities issued by Vaso Active, and by use of the means and instruments of communication in interstate commerce and the mails, defendants Vaso Active and John Masiz each knowingly or recklessly made materially false and misleading public statements, and failed to disclose material facts, relating to the need for or status of FDA approval of Vaso Active's products using VALE technology.

38.     By reason of the foregoing, defendants Vaso Active and John Masiz violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act.

## THIRD CLAIM

**Defendants Vaso Active and John Masiz Violated Section 13(a)
of the Exchange Act and Rules 13a-1 and 12b-20 Thereunder;
Defendant Masiz Also Violated Rule 13a-14 and Aided and Abetted
Vaso Active's Violations**

39.     Paragraphs 1 through 30 are realleged and incorporated by reference.

40.     Section 13(a) of the Exchange Act and Rule 13a-1 thereunder provide, inter
alia, that each issuer of a security registered under Section 12 of the Exchange Act must file
annual reports.  The information contained in such annual reports must be complete and
accurate.  Further, Rule 12b-20 requires that SEC filings must include all information
necessary to ensure that the filing is not materially misleading.

41.     An individual is liable for an issuer's violation of Section 13(a) of the
Exchange Act and Rule 13a-1 if that individual is a "controlling person" of the issuer under
Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], unless that individual did not induce
the acts constituting the violation and acted in good faith.

42.     Section 20(e) of the Exchange Act provides that any person who knowingly
provides substantial assistance to another person in connection with a violation of the
Exchange Act or any rule thereunder is in violation to the same extent as the person to
whom the assistance is provided.

43.     As described above in Paragraph 33, Vaso Active made false and misleading
statements of material fact regarding the need for or status of FDA approval of its products
in its annual report filed with the SEC on March 26, 2004.

44.     John Masiz was a controlling person with regard to Vaso Active when
Vaso Active filed its annual report on March 26, 2004, induced the material
misrepresentations and omissions in that filing, and did not act in good faith.

11

45. John Masiz knowingly provided substantial assistance to Vaso Active in connection with Vaso Active's material misrepresentations and omissions in its annual report filed on March 26, 2004.

46. John Masiz, as Chairman and CEO of Vaso Active, falsely certified the company's annual report, filed on March 26, 2004.

47. By reason of the foregoing, Vaso Active violated, and unless enjoined will continue to violate, Section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder.

48. By reason of the foregoing, John Masiz violated, and unless enjoined will continue to violate, Section 13(a) of the Exchange Act and Rules 13a-1, 13a-14 and 12b-20 thereunder, and is liable under Section 20(e) of the Exchange Act as an aider and abettor of Vaso Active's violations.

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that this Court:

(i) permanently enjoin Vaso Active from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 17(a) of the Securities Act, and Section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder;

(ii) permanently enjoin John Masiz from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 17(a) of the Securities Act, and Section 13(a) of the Exchange Act and Rules 13a-1, 13a-14 and 12b-20 thereunder, and from aiding and abetting violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder;

(iii)    order that pursuant to Section 21(d)(2) of the Exchange Act, John Masiz is

barred from acting as an officer or director of any company that issues or has issued

securities registered pursuant to Section 12 of the Exchange Act or is required to file reports

pursuant to Section 15(d) of the Exchange Act;

(iv)    order John Masiz to pay a civil monetary penalty pursuant to Section 20(d)

of the Securities Act and Section 21(d)(3) of the Exchange Act; and

(v)    grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Date: August 17, 2004

H. Michael Semler (DC Bar # 162479)
Mark Kreitman  (DC Bar 260828)
Michael P. Moore  (DC Bar 438608)
William Sullivan
Jena Martin  (DC Bar 459776)
Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth Street, N.W., Mail Stop 9-11
Washington, D.C. 20549-0911
Tel: (202) 824-5377
Fax: (202) 942-9581

13